TRACY L. WILKINSON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
BRENT A. WHITTLESEY (Cal. Bar No. 73493)
Assistant United States Attorney
Asset Forfeiture Section
        Federal Courthouse, 14th Floor
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-5421
        Facsimile: (213) 894-0142
        E-mail: brent.whittlesey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

                         SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | No. 8:21-CV-01310 |
|---|---|
| Plaintiff, | VERIFIED COMPLAINT FOR FORFEITURE |
| v. | 18 U.S.C. §§ 981(a)(1)(C) and 984 |
| $1,707,197.13 FROM FIDELITY INVESTMENT BANK FUNDS ACCOUNT NUMBER '6516 AND $1,953.93 FROM FIDELITY INVESTMENT BANK FUNDS ACCOUNT NUMBER '3501, | [IRS] |
| Defendants. | |

        Plaintiff United States of America brings this claim against

defendants $1,707,197.13 From Fidelity Investment Bank Funds Account

Number '6516[1] and $1,953.93 From Fidelity Investment Bank Funds Account Number '3501, and alleges as follows:

**JURISDICTION AND VENUE**

1.   This is an <u>in rem</u> civil forfeiture action brought pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984.

2.   This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.   Venue lies in this district pursuant to 28 U.S.C. § 1395.

**PERSONS AND ENTITIES**

4.   The plaintiff in this action is the United States of America.

5.   The defendants in this action (collectively, the "defendant funds") are:

i.   $1,707,197.13 From Fidelity Investment Bank Funds Account Number 6516 ("Account 6516"), which is an account in the name of Coastridge Capital Partners ("Coastridge") and for which William Nicoloff ("W. Nicoloff") and Michelle Nicoloff ("M. Nicoloff") has signature authority; and

ii.   $1,953.93 From Fidelity Investment Bank Funds Account Number 3501 ("Account 3501"), which is an account in the name of W. Nicoloff and M. Nicoloff and for which W. Nicoloff and M. Nicoloff has signature authority.

6.   The defendant funds which were seized on or about October 20, 2020 during the execution of a federal seizure warrant at Fidelity Investments located at 245 Summer Street, Boston

---

[1] Pursuant to Local Rule 5.2-1, only the last four digits of bank account numbers are set forth in this Complaint.

Massachusetts, 02210.

7.    The defendant funds are currently in the custody of the United States Treasury Department in this District, where they shall remain subject to this Court's jurisdiction during the pendency of this action.

8.    The interests of W. Nicoloff, Coastridge, Bentley Energy Partners, LLC ("Bentley"), David Capital LLC ("David Capital"), Stonecreek Capital Partners ("Stonecreek"), M. Nicoloff, U.S. Small Business Administration ("SBA") and Fidelity Investments ("Fidelity") may be adversely affected by these proceedings.

**BASIS FOR FORFEITURE**

W. Nicoloff's Fraudulent Scheme

9.    W. Nicoloff submitted loan applications for entities named Bentley, Coastridge, David Capital, Stonecreek, M. Nicoloff, and W. Nicoloff (collectively, the "Nicoloff Entities").

10.   These loan applications included altered documentation and other false information to obtain loans guaranteed by the SBA through the Paycheck Protection Program ("PPP"), which is a program created by the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act.

11.   W. Nicoloff obtained over $1.5 million in PPP loans from lenders, including US Bank, NA ("US Bank") and Transportation Alliance Bank, dba TAB Bank ("TAB").  The table below identifies the PPP loans obtained by W. Nicoloff:

| DATE | ENTITY | AMOUNT | BANK |
|------|--------|--------|------|
| 4/20/2020 | Stonecreek | $20,832 | US Bank |

| 5/6/2020 | Coastridge | $250,990 | TAB |
| 5/15/2020 | M. Nicoloff | $50,313 | US Bank |
| 5/19/2020 | W. Nicoloff | $20,832 | US Bank |
| 6/16/2020 | Bentley | $805,207 | US Bank |
| 6/17/2020 | David Capital | $405,880 | US Bank |
| | **Total Amount** | **$1,554,054** | |

12.    Instead of using loan proceeds for their intended purpose, and in contravention of the rules of the PPP program, W. Nicoloff misappropriated the loan proceeds for personal benefit by using the loan proceeds for securities trading activity unrelated to the businesses for which the PPP loans were obtained.

Description of The PPP

13.    The Coronavirus Aid, Relief, and Economic Security Act, which is also known as the CARES Act, is a federal law enacted around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP.  Around April 2020, Congress authorized over $300 billion in additional PPP funding.

14.    In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business, through its authorized representative, to acknowledge

4

the Program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification requires the applicant, through its authorized representative, to affirm that:

> [t]he [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges.

15.   In addition, the business, through its authorized representative, must state, among other things, the company's number of employees and average monthly payroll expenses, and provide documentation showing the company's payroll expenses.  The employee and payroll expense numbers are used to calculate the amount of money the business is eligible to receive under the PPP.

16.   In the first instance, the company's PPP loan application is received and processed by a participating financial institution, and then the application is transmitted to the SBA for further review and assessment of the applicant's eligibility.  If a PPP loan application is approved, the participating financial institution funds the PPP loan using the financial institution's own monies.

17.   PPP loan proceeds must be used by the business on certain permissible expenses, namely payroll costs, interest on mortgages, rent and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and uses at least 75%

1  of the PPP loan proceeds on payroll expenses.

2  Submission of Loan Application Seeking PPP Loan For Bentley

3      18.   On or about May 23, 2020, borrower Bentley submitted an

4  application and supporting documentation for a PPP loan in the amount

5  of $805,207 to US Bank that contained numerous false statements.  The

6  application falsely stated that: (1) Bentley had forty-two employees

7  with an average monthly payroll of $322,083; (2) the applicant, W.

8  Nicoloff, did not own any other business or have common management

9  with any other business; (3) "All SBA loan proceeds will be used only

10 for business-related purposes as specified in the loan application

11 and consistent with the PPP Rule"; and (4) "The funds will be used to

12 retain workers and maintain payroll or make mortgage interest

13 payments, lease payments, and utility payments, as specified under

14 the PPP Rule."

15     19.   The supporting documents Bentley submitted to US Bank with

16 the PPP loan application, included IRS U.S. Corporation Income Tax

17 Return (Form 1120) for the year 2019 and IRS Employer's Annual

18 Federal (Form 941) for the first quarter of 2020 that did not support

19 the statements and certifications described in the previous

20 paragraph.  IRS records appeared to show that these supporting

21 documents had been fabricated because there is currently no record of

22 any Form 1120 or Form 941 being filed for any period by Bentley.

23 There is also no record of any income tax or employment tax payment

24 made by Bentley to the IRS for any period.

25     20.   The PPP application for Bentley contained the Employer

26 Identification Number ("EIN") 85-1126382 that was obtained online on

27 May 20, 2020.  W. Nicoloff's social security number, address, and

28

telephone number were submitted to the IRS during the online application process for the EIN.  This indicates fraud because, per the PPP Application Loan Form, the borrower must certify that the business was in operation on February 15, 2020.  Bentley was incorporated in the State of Wyoming on January 14, 2016 and was inactive as of March 11, 2017.

21.  On the PPP loan application, W. Nicoloff is listed as the sole owner of Bentley, which purportedly had forty-two employees and a business address of 4695 MacArthur Ct #11, Newport Beach, California (the "MacArthur Court address").  The application included a payroll report, which listed purported employee names and addresses.  A search of the first fifteen addresses on the U.S. Postal Service website showed that these addresses do not exist.

22.  W. Nicoloff submitted to US Bank a lease invoice related to Bentley (account number ending in 5773) showing a balance for April 2020 of $8,192.33 for the MacArthur Court address.  On September 30, 2020, an agent went to the MacArthur Court address and determined that the location was owned by Regus, a business that offered "workspaces" and "virtual offices."

23.  Records obtained from Regus showed that account number ending 5773 had not been active since July 31, 2019.  The account was associated to Bentley with W. Nicoloff as the contact.  The service agreement ended on July 31, 2019 and showed only one person using the office space for $501 per month.

24.  On or about June 3, 2020, as additional purported support of the Bentley PPP loan application, W. Nicoloff submitted to US Bank what appears to be a Fidelity statement for account 6516, for the

period of March 1-31, 2020, in the name of Bentley Attn: Mr. William
Nicoloff.  Records obtained from Fidelity showed account 6516 is a
brokerage account in the name of Coastridge, not Bentley.  The
Fidelity statement submitted by W. Nicoloff for Bentley appears to be
fabricated to show false business withdrawals, including the
$8,192.33 invoice from Regus, and also to show that the business
purportedly maintained a bank account.

25.  On or about June 16, 2020, Bentley's PPP loan application
was approved, and US Bank paid approximately $805,207 in fraudulently
obtained loan proceeds to Account 6516.

Submission of Loan Application Seeking PPP Loan For David Capital

26.  On or about May 26, 2020, David Capital submitted a PPP
loan application and supporting documentation to US Bank in the
amount of $405,880.  The application falsely stated that: (1) David
Capital had nineteen employees with an average monthly payroll of
$162,352; (2) the applicant, or any owner of the applicant did not
own any other business or have common management with any other
business; (3) "All SBA loan proceeds will be used only for business-
retailed purposes as specified in the loan application and consistent
with the PPP Rule;" and (4) "The funds will be used to retain workers
and maintain payroll or make mortgage interest payments, lease
payments, and utility payments, as specified under the PPP Rule."

27.  The supporting documents for David Capital included an IRS
U.S. Corporation Income Tax Return (Form 1120) for the year 2019, and
IRS Employer's Annual Federal Tax Return (Form 944) for the year
2019, and an IRS Employer's Quarterly Federal Tax Return (Form 941)
for the first quarter of 2020.  The IRS has no record of any Form

1  1120, Form 944 or Form 941 currently on file with the IRS for any

2  period by David Capital.  IRS has no record of any income tax or

3  employment tax payment made by David Capital for any period.  It

4  appears that the supporting IRS documents submitted by W. Nicoloff

5  were fabricated.  W. Nicoloff's social security number is listed as

6  the Tax Identification Number ("TIN") or Individual Taxpayer

7  Identification Number ("ITIN") of the principal owner of David

8  Capital.

9       28.  On the PPP loan application, W. Nicoloff was listed as the

10  sole owner of David Capital, with a business address located at 4000

11  MacArthur Blvd #600, Newport Beach, California.  The payroll reports

12  submitted to US Bank for David Capital listed nineteen employees who

13  were also listed on Bentley's payroll report of forty-two employees.

14  The payroll reports for Bentley and David Capital allege that the

15  same nineteen employees who work forty hours for Bentley also work

16  forty hours for David Capital.

17      29.  On or about June 11, 2010, at the request of US Bank, W.

18  Nicoloff provided a cancelled check from a bank account for purposes

19  of funding the loan.  W. Nicoloff emailed to US Bank a cancelled

20  check allegedly from David Capital's Fidelity account ending in 8041

21  that cleared approximately on May 5, 2020.  Fidelity records for the

22  account ending in 8041 showed that no checks cleared in May 2020, and

23  that the account was held in the name of W. Nicoloff and M. Nicoloff,

24  not David Capital.  The cancelled check submitted appeared to be

25  altered and never negotiated, and the back of this check appeared to

26  be the same as a cancelled check submitted on another PPP loan

27  application.  No actual accounts at Fidelity or elsewhere have been

28

identified for David Capital.

30.  On May 27, 2020 W. Nicoloff submitted to US Bank a lease agreement between LH Property Management and David Capital for a commercial property lease at 4000 MacArthur Blvd, Suite 600, Newport Beach, California from March 2016 to March 2021 alleging $4,000 in monthly rent.  Agents went to that address and discovered the address was another virtual office/workspace business named Premier Workspaces.  There was no business named David Capital.

31.  Premier Workspaces' records showed that W. Nicoloff and Stonecreek subscribed to answering services, not physical office space between November 2014 and May 2015.  Premier Workspaces had no other records for W. Nicoloff or any of the Nicoloff Entities.

32.  On or about June 17, 2020, David Capital's PPP loan application was approved, and US Bank paid approximately $405,880 to the Fidelity Account Number 8041 ("Account 8041").  On or about June 17, 2020, approximately $405,880.25 was transferred from Account 8041 to Account 6516.

Submission of Loan Application Seeking PPP Loan For Stonecreek

33.  On or about April 13, 2020, borrower Stonecreek submitted an application and supporting documentation for a PPP loan in the amount of $20,832 that contained numerous false statements.  The application falsely stated that: (1) Stonecreek had one employee with an average monthly payroll of $8,333; (2) the applicant, W. Nicoloff did not own any other business or have common management with any other business; (3) "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the PPP Rule"; and (4) "The funds will be used to

retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rule."

34.   The supporting documents submitted to US Bank for the PPP loan application included an IRS Form 1099-Misc, Miscellaneous Income, for the tax year 2019 and did not support the statements and certifications made in the application.   The IRS Form 1099-Misc reported a payment of $108,900 in nonemployee compensation that was paid to W. Nicoloff by Stonecreek in 2019.   IRS records found no such Form 1099-Misc filed by Stonecreek under W. Nicoloff's social security number for the tax year 2019.   On the loan application, W. Nicoloff was listed as the sole owner of Stonecreek and the business address was listed as Ladera Ranch, California[2] which is W. Nicoloff's home residence.

35.   On or about April 20, 2020, Stoncreek's PPP loan was approved, and US Bank paid approximately $20,832 to Stonecreek's US Bank account ending in 0188 ("USB Account 0188").

36.   On or about April 21, 2020, approximately $15,990 was deposited via check made payable to Coastridge from Stonecreek's USB Account 0188 to Account 6516.

Submission of Loan Application Seeking PPP Loan For M. Nicoloff

37.   On or about May 8, 2020, borrower W. Nicoloff submitted an application and supporting documentation for a PPP loan in the amount of $50,313 that contained numerous false statements.   The application

---

[2] Pursuant to Local Rule 5.2-1, the residence address has been omitted from this Complaint.

11

falsely stated that: (1) M. Nicoloff had three employees with an average monthly payroll of $20,583; (2) the applicant, M. Nicoloff, did not own any other business or have common management with any other business; (3) "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the PPP Rule"; and (4) "the funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rule."

38.   The supporting documents included an IRS Employer's Quarterly Federal Tax Return (Form 941) for the first quarter of 2020 and a Schedule C, Profit or Loss From Business (sole Proprietorship), for the tax year 2019 and did not support the statements and certifications made in the application.  The Form 941 submitted reported total wages of $36,750 for three employees employed by M. Nicoloff under the business trade name Michelle Nicoloff Photography, and a total employment tax deposit of $13,000 made to the IRS in the first quarter of 2020.  IRS records show no record of any Form 941 on file with the IRS for any period from M. Nicoloff or Michelle Nicoloff Photography.  IRS shows no records of any employment tax deposit paid to the IRS from M. Nicoloff or Michelle Nicoloff Photography.  The Schedule C submitted reported a gross receipt of $335,000 and a net profit of $105,500 for 2019 for M. Nicoloff's professional photography business.  IRS records show no records found for a Schedule C filed under M. Nicoloff's social security number for her professional photography business in the 2019 joint income tax return filed with W. Nicoloff.  IRS found no record of any separate

income tax return filed by M. Nicoloff.

39.  On the PPP loan application, M. Nicoloff's submitted the phone number ending 3858 as the "business phone" for M. Nicoloff. AT&T Wireless subscriber records show this number is W. Nicoloff's cell phone number.  The "email address" submitted on the loan application form was the same email address used by W. Nicoloff on the other PPP application forms.

40.  The M. Nicoloff PPP loan application listed three employees of a sole proprietorship.  According to the payroll records submitted with the application, Nicoloff and two other individuals were employees working forty hours as of February 15, 2020.  A search of the addresses provided for the employees, showed that these addresses do not exist.

41.  On or about May 15, 2020, M. Nicoloff's PPP loan was approved, and US Bank paid approximately $50,313 to Account 3501.  On or about May 15, 2020, approximately $45,000 was transferred from Account 3501 to Account 6516.

Submission of Loan Application Seeking PPP Loan For W. Nicoloff

42.  On or about May 13, 2020, borrower W. Nicoloff submitted a PPP loan application and supporting documentation to US Bank in the amount of $20,832.  The application and supporting documentation contained numerous false statements such that: (1) W. Nicoloff had one employee, himself, with an average monthly payroll of $8,333; (2) the applicant, W. Nicoloff, did not own any other business or have common management with any other business; (3) "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the PPP Rule": and (4) "The

1  funds will be used to retain workers and maintain payroll or make

2  mortgage interest payments, lease payments, and utility payments, as

3  specified under the PPP Rule."

4      43.  W. Nicoloff submitted supporting documents for the PPP loan

5  including an IRS Form 1099-Misc, Miscellaneous Income, for the tax

6  year 2019 and a Schedule C, Profit or Loss From Business (Sole

7  Proprietorship), for the tax year 2019 that did not support the

8  statements and certifications in the previous paragraph.  The Form

9  1099-Misc submitted to US Bank reported $318,050 in nonemployee

10  compensation received by W. Nicoloff in 2019 from a company named

11  Bentley Associates LP.  However, the IRS Form 1099-Misc reported by

12  Bentley Associates LP for W. Nicoloff showed $11,475 in nonemployee

13  compensation paid to W. Nicoloff in 2019.  The Schedule C submitted

14  to US Bank for the PPP loan showed gross receipts of $318,050 and a

15  net profit of $302,217 for W. Nicoloff's investment banking business

16  in 2019.  W. Nicoloff's 2019 federal income tax return filed with the

17  IRS, reported gross receipts of $18,050 and a net profit of $2,217 on

18  the Schedule C for W. Nicoloff's investment banking business.

19      44.  On or about May 19, 2020, W. Nicoloff's PPP loan was

20  approved, and US Bank paid approximately $20,832 to Account 3501,

21  representing fraudulently obtained loan proceeds.  On or about May

22  20, 2020, approximately $24,191.07 was transferred from Account 3501

23  into Account 6516.

24  Submission of Loan Application Seeking PPP Loan For Coastridge

25      45.  On or about April 28, 2020, borrower Coastridge, submitted

26  an application and supporting documentation for a PPP loan to TAB

27  Bank in the amount of $250,999.  The application and supporting

14

documentation contained numerous false statements, such that: (1) Coastridge had thirteen employees with an average monthly payroll of $100,396; (2) the applicant, W. Nicoloff, did not own any other business or have common management with any other business; (3) "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck PPP Rule: and (4) "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rule."

46.   The supporting documents submitted to TAB Bank for the PPP loan application for Coastridge included IRS U.S. Corporation Income Tax Return (Form 1120) for the year 2019, and four IRS Employer's Quarterly Federal Tax Returns (Form 941) for each of the four quarters of 2019, did not support the statements and certifications in the previous paragraph.  IRS records found no record of any Form 1120 or Form 941 related to Coastridge currently on file with the IRS for any period.  There was also no record of any income tax or employment tax payment made by Coastridge to the IRS for any period. W. Nicoloff's social security number is listed as the TIN or ITIN of the principal owner of Coastridge.

47.   On the PPP loan application for Coastridge, W. Nicoloff was listed as the sole owner of Coastridge with thirteen employees and a business address as Ladera Ranch, California.  The payroll reports submitted on behalf of Coastridge listed the same thirteen employees that appeared on Bentley and David Capital's payroll reports.  As with the other W. Nicoloff entities detailed above, a U.S. Postal Service search of the addresses for the alleged employees showed that

these addresses do not exist.

48.  On September 30, 2020, agents went to the business sites address as listed on the PPP loan application.  The address is a single-family home located in a residential area and does not appear to be a business complex that would support thirteen employees.

49.  As part of the loan process, W. Nicoloff submitted to TAB Bank, a California Secretary of State ("CA-SOS") Statement of Information document signed by W Nicoloff on February 15, 2020 for Coastridge that referenced State File number 2395610.  This is not a valid CA-SOS file number. Further, a search of Delaware Secretary's Office website referenced on the submitted certificate showed the certificate belonged to a company name Billiken Buyer, Inc.

50.  On or about May 6, 2020, Coastridge's PPP loan application was approved, and TAB Bank paid approximately $250,990 to Account 6516, representing fraudulently obtained loan proceeds.

Tracing Analysis for Account 6516

51.  On or about April 1, 2020, before any PPP loan proceeds were paid or transferred into Account 6516, the balance was approximately $296,424.83.

52.  On or about September 30, 2020, the balance of Account 6516 was approximately $2,003,621.96.  The table below shows the various activities that occurred from April 1, 2020 to September 30, 2020:

| Date/Period | Activity | Amount | Balance |
|---|---|---|---|
| 04/01/2020 | Balance before PPP Loan Proceeds | | $296,424.83 |
| 04/01/2020 to 09/30/2020 | PPP Loan Proceeds Paid or Transferred from various Nicoloff Entities | $1,547,258.32 | |

| | | | |
|---|---|---|---|
| 04/01/2020 to 09/30/2020 | Securities Bought | ($6,916,135.83) | |
| 04/01/2020 to 09/30/2020 | Securities Sold | $7,107,229.83 | |
| 04/01/2020 to 09/30/2020 | Dividends, Interest, and Other Income | $11,219.40 | |
| 04/01/2020 to 09/30/2020 | Non-PPP Loan Proceed Transfers In | $5,355.33 | |
| 04/01/2020 to 09/30/2020 | Transfers Out | ($32,738.73) | |
| 04/01/2020 to 09/30/2020 | Margin Interest | ($14,991.19) | |
| 04/01/2020 to 09/30/2020 | Net Change | | $1,707,197.13 |
| 09/30/2020 | Balance | | $2,003,621.96 |

53.   The following table details how the approximately $1,547,258.32 of fraudulently obtained PPP loan proceeds were paid or transferred into Account 6516:

| DATE | NICOLOFF ENTITY | AMOUNT | PPP LENDER | METHOD |
|---|---|---|---|---|
| 04/21/2020 | Stonecreek | $15,990.00 | US Bank | Check Deposit from US Bank x0188 to '6516 |
| 05/06/2020 | Coastridge | $250,990.00 | TAB Bank | Paid from TAB Bank to '6516 |
| 05/15/2020 | M. Nicoloff | $45,000.00 | US Bank | Transfer from '3501 to '6516 |
| 05/20/2020 | W. Nicoloff | $24,191.07 | US Bank | Transfer from '3501 to '6516 |

| 06/16/2020 | Bentley | $805,207.00 | US Bank | Paid from US Bank to '6516 |
|---|---|---|---|---|
| 06/17/2020 | David Capital | $405,880.25 | US Bank | Paid from US Bank to '6516 |
| | **Total Amount** | **$1,547,258.32** | | |

54.   During the period between January 1, 2020, and February 28, 2020, W. Nicoloff did not purchase or sell any securities in account 6516.  Therefore, there were no realized gains or losses in Account 6516 during that period.

55.   During the period between April 1, 2020, and September 30, 2020, once PPP loan proceeds were either paid or transferred into Account 6516, W. Nicoloff purchase approximately $6,916,135.83 and sold approximately $7,107,229.83 in securities, increasing the balance in Account 6516 by $1,707,197.13.

Tracing Analysis for Account 3501

56.   On or about May 15, 2020, and May 19, 2020, US Bank paid approximately $71,145 in PPP loan proceeds into account 3501.

57.   On or about May 15, 2020, and May 20, 2020, approximately $69,191.07 was transferred from Account 3501 into Account 6516. $1,953.92 in PPP loan proceeds remained in Account 3501.

58.   The Defendant Funds exceed the total amount of the PPP loans granted because the Defendant Funds include trading profits realized by W. Nicoloff through activity in Account 6516.  The trading profits are proceeds of the PPP fraud scheme.

FIRST CLAIM FOR RELIEF

59.   Plaintiff incorporates the allegations of paragraphs 1-58

above as though fully set forth herein.

60.  Based on the above, plaintiff United States of America alleges that the defendant funds constitute or are derived from proceeds traceable to violations of 18 U.S.C. §§ 1341 (mail fraud) and/or 1344 (bank fraud).  The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).  In addition, to the extent that the defendant funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff United States of America alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject of forfeiture pursuant to 18 U.S.C. § 984.

SECOND CLAIM FOR RELIEF

61.  Plaintiff incorporates the allegations of paragraphs 1-58 above as though fully set forth herein.

62.  Based on the above, plaintiff alleges that the defendant funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. § 1343 (wire fraud) and or 1344 (bank fraud).  The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, to the extent that the defendant funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff United States of America alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the

1    defendant funds subject of forfeiture pursuant to 18 U.S.C. § 984.

2    <u>THIRD CLAIM FOR RELIEF</u>

3    63. Plaintiff incorporates the allegations of paragraphs 1-58

4    above as though fully set forth herein.

5    64. Based on the above, plaintiff alleges that the defendant

6    funds constitute property involved in multiple transactions or

7    attempted transactions in violation of 18 U.S.C. § 1957(a), or

8    property traceable to such property, with the specified unlawful

9    activity being a violation of 18 U.S.C. § 1343 and or 1344. The

10    defendant funds are therefore subject to forfeiture pursuant to 18

11    U.S.C. § 981(a)(1)(A). In addition, to the extent that the

12    defendants are not the actual monies directly traceable to the

13    illegal activity identified herein, plaintiff United States of

14    America alleges that the defendant funds are identical property found

15    in the same account or place as the property involved in the

16    specified offense, rendering the defendant funds subject of

17    forfeiture pursuant to 18 U.S.C. § 984.

18    WHEREFORE, plaintiff United States of America prays:

19    (a) that due process issue to enforce the forfeiture of the

20    defendant funds;

21    (b) that due notice be given to all interested parties to

22    appear and show cause why forfeiture should be not be decreed;

23    (c) that this Court decree forfeiture of the defendant funds to

24    the United States of America for disposition according to law; and

25    ///

26    ///

27

28

1       (d) for such other and further relief as this Court may deem

2   just and proper, together with the costs and disbursements of this

3   action.

4    Dated: August 6, 2021     TRACY L. WILKINSON
                  Acting United States Attorney

5                     SCOTT M. GARRINGER
                  Assistant United States Attorney

6                     Chief, Criminal Division
                  STEVEN R. WELK

7                     Assistant United States Attorney
                  Chief, Asset Forfeiture Section

8

9                      */s/Brent A. Whittlesey*

10                     BRENT A. WHITTLESEY
                  Assistant United States Attorney

11                     Attorneys for Plaintiff
                  UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**VERIFICATION**

2     I, Michael Ji, hereby declare that:

3     1.   I am a Special Agent of the United States Internal Revenue

4 Service.

5     2.   I have read the above Verified Complaint for Forfeiture and

6 know its contents.  It is based upon my own personal knowledge and

7 reports provided to me by other law enforcement agents.

8     3.   Everything contained in the Verified Complaint for

9 Forfeiture is true and correct, to the best of my knowledge and

10 belief.

11     I declare under penalty of perjury that the foregoing is true

12 and correct.

13     Executed August 6, 2021 in Santa Ana, California.

14

15                     _____

16                     MICHAEL JI

17                     Special Agent
                       United States Internal Revenue Service

18

19

20

21

22

23

24

25

26

27

28